IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS CHARLES MOWBRAY )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 18-1049
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Thomas Charles Mowbray ("Mowbray") filed an application for supplemental security income ("SSI") in October of 2014 alleging disability based upon both physical and mental impairments. His application was denied. He was represented by counsel at a hearing before an Administrative Law Judge ("ALJ") during which both he and a vocational expert ("VE") testified. (R. 33-66) Ultimately, the ALJ denied benefits and the Appeals Council denied Mowbray's request for review. (R. 1-7) Proceeding *pro se*, Mowbray filed this appeal. The parties have filed Cross-Motions for Summary Judgment. See ECF Docket Nos. 15, 16, 17. For the reasons set forth below, the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court

to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence,

assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." [Brunson v. Astrue, 2011 WL 2036692](), 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

As stated above, the ALJ denied Mowbray's claim for benefits. More specifically, at step one, the ALJ found that Mowbray has not engaged in substantial gainful activity since the alleged onset date. (R. 18) At step two, the ALJ concluded that Mowbray suffers from the following severe impairments: DJD of the knees; chronic head pain; obesity; major depressive disorder; bipolar disorder; generalized anxiety disorder; obsessive-compulsive disorder; ADHD; and alcohol dependence. (R. 18-19) At step three, the ALJ determined that Mowbray does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in [20 C.F.R. Part 404](), Subpart P, Appendix 1. (R.19-21) Between steps three and four, the ALJ decided that Mowbray has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 21-25) At step four, the ALJ found that Mowbray is unable to perform past relevant work. (R. 225) At the fifth step of the analysis, the ALJ concluded that, considering Mowbray's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 26-27)

III. Discussion

3

Mowbray presents several issues on appeal. He disputes the ALJ's findings under the third step of the analysis that he did not satisfy any of the Listings requirements. He also insists that the ALJ failed to properly consider all of the relevant evidence. Finally, Mowbray seeks to have this Court consider evidence which was not submitted to either the ALJ or the Appeals Council. For the reasons set forth below, I reject each contention.

*1. Additional Evidence*

Mowbray submits numerous extra-record exhibits for this Court's consideration. My review of the ALJ's decision is limited to evidence that was before him / her. Therefore, pursuant to Sentence Four of § 405(g), I cannot look at post-decision evidence that was not first submitted to the ALJ. 42 U.S.C. § 405(g).

If a plaintiff proffers evidence that was not previously presented to the ALJ, then a district court *may* remand pursuant to Sentence Six of 42 U.S.C. § 405(g), but only when the evidence is new and material and supported by a demonstration of good cause for not having submitted the evidence before the decision of the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 591-93 (3d Cir. 2001) (Sentence Six review), *citing, Szubak v. Sec'y. of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). In *Szubak*, the Third Circuit Court explained:

> As amended in 1980, § 405(g) now requires that to support a "new evidence" remand, the evidence must first be "new" and not merely cumulative of what is already in the record. Second, the evidence must be "material;" it must be relevant and probative. Beyond that the materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the Secretary's determination. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.

4

*Szubak v. Sec. of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984) (citations omitted). All three requirements must be satisfied to justify a remand. *Id.* Here, Mowbray has not offered any argument as to how the exhibits he has proffered are new or material, or that good cause exists for not having incorporated them into the administrative record. Ordinarily, the failure to develop such an argument would be fatal to his position. However, given his status as a *pro se* litigant, I will take the time to examine the issues more closely.

Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." See *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). After careful review of the proffered exhibits, I note that many of them existed at the time of the administrative proceeding. Mowbray protectively filed an application for SSI on October 27, 2014 and the ALJ did not hold the hearing until February 27, 2017. (R. 16) Exhibits G1, G2, G3, G4, G5, G9, G11, and G12 all consist of materials that were available prior to the date of the hearing. As such they were not "new" or otherwise "unavailable."[1]

The exhibits fail to pass the "materiality" test as well. The evidence must be "relevant and probative" and there must "be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Szubak*, 745 F.2d at 833. With respect to those exhibits which are arguably "new" or which were otherwise "unavailable," I find that they are neither relevant nor probative. The numerous newspaper articles were written *after* the ALJ issued his decision in this case. See G15,

---

[1] Counsel for Mowbray asked at the beginning of the hearing to hold the record open so that she could submit additional records. The ALJ agreed to do so. Eventually counsel requested that the record be closed and represented that all relevant documents had been submitted. (R. 272)

5

G16, G17. As such, they are not relevant to the time period at issue. Further, while they may be an indictment of the police department they do not speak to the issue of Mowbray's impairments or limitations arising therefrom. The December 20, 2017 letter from Dr. Burke regarding the status of Mowbray's knee also lacks relevance because it was authored *after* the ALJ issued his decision in this case. *See* G10. Moreover, the letter does not speak to any limitations stemming from Mowbray's degenerative arthritis of the knee. In fact, Dr. Burke comments that Mowbray's "prognosis is good." *See* G10. The April 19, 2017 "After Visit Summary from UPMC Mercy" is not probative either. *See* G8. The Summary reveals only that Mowbray was diagnosed with an acute headache and was given a prescription for Flexeril to be taken as needed for muscle spasms. There is no explanation of limitations associated with the headaches. Finally, Mowbray submits Exhibits G6 and G7, which consist of court summaries dated May 27, 2019, and which detail arrests. Neither of these exhibits speak at all to Mowbray's impairments or limitations related to those impairments. As such, the exhibits lack any relevance or probative value.

Finally, Mowbray fails to offer any "good cause" for not offering this evidence during the administrative hearing. As stated above, Mowbray was represented at the administrative level. Following the hearing, Mowbray's counsel instructed the ALJ to close the record. (R. 272) Consequently, I find that Mowbray has not established "good cause" for failing to submit the records during the administrative process.

Because the proffered evidence is neither new or material, and because good cause has not been demonstrated for failing to submit the evidence, there is no basis for remand.

### 2. Drs. Garbutt and Boettcher

Mowbray also complains of the weight the ALJ accorded opinions tendered by Drs. Garbutt and Boettcher. *See* ECF Docket No. 16, p. 19-21. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id*, § 416.927(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only where an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.*, § 416.927(c)(4).

If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

7

substantial evidence [of] record," he must give that opinion controlling weight. *Id*. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id*, § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained that:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting, Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id*. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Sec. Admin.*, Civ. No. 10-2517, 2010 WL 5078238, at * 5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

Here, Mowbray highlights portions of the record which he asserts support his claim of disability, that is, the records which indicate that he is "irritable, anxious, labile, blunted, secretive and expressing a myriad of issues." *Id*. To be clear, the standard is not whether there is evidence to establish Mowbray's position. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989).

> [The] question before me is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding … Substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance. *Jesurum v. Sec'y. of U.S. Dep't. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing,*

8

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Weidow v. Colvin*, Civ. No. 15-765, 2016 WL 5871164, at * 18 (M.D. Pa. Oct. 7, 2016). Thus, the question before me is whether substantial evidence supports the ALJ's findings. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989).

After careful review, I find that it does. Mowbray contends that the ALJ "demonstrated the most bias and disregard for medical evidence when he gave little weight to … [Drs. Garbutt's and Boettcher's opinions] which are legal statements of a medical condition in relation of the plaintiff's disabilities." *See* ECF Docket No. 16, p. 20. I disagree. Dr. Garbutt completed a form for the Pennsylvania Department of Human Services.[2] (R. 314) The form consists of check box answers in which Garbutt indicates that Mowbray: is not pregnant; is participating in individual therapy; and suffers from bipolar disorder which reduces his ability to financially support himself. (R. 314) No additional information is provided. Dr. Boettcher completed a form for the Pennsylvania Department of Revenue.[3] (R. 315) Boettcher simply signed a form certifying that Mowbray is her patient and is "permanently and totally disabled under the standards that the federal Social Security Act … requires for determining permanent and total

---

[2] The form is a Medical Exemption Form for the Supplemental Nutrition Assistance Program ("SNAP"). It provides an exception from the limit for Able-Bodied Adults without Dependents to only 3 months of SNAP within 36 months. The rule applies "unless the adult is working a minimum of 20 hours per week or is exempt from the time limit because the individual is medically certified as physically or mentally unfit for employment or falls within another exemption." (R. 314)

[3] The instructions on the form Boettcher completed read as follows: "A claimant not covered under the federal Social Security Act or the federal Railroad Retirement Act who is unable to submit proof of permanent and total disability may submit this Physician's Statement. The physician must determine the claimant's status using the same standards for determining permanent and total disability under the federal Social Security Act or the federal Railroad Retirement Act. CAUTION: If the claimant applied for Social Security disability benefits and the Social Security Administration did not rule in the claimant's favor, the claimant is not eligible for a Property Tax or Rent Rebate." (R. 315)

disability." (R. 315) Boettcher described as support for declaring Mowbray totally and permanently disabled: "[d]ifficulty concentration [sic], persistent social anxiety, impulse control issues, lack of motivation, lack of family support, poor social and interpersonal skills, poor judgment, … stress, inappropriate behavior, … aggressive behavior towards others." (R. 315)

The ALJ gave both Garbutt's and Boettcher's opinions little weight.[4] (R. 24-25) The ALJ explained that the standard Garbutt used was unclear and it was impossible to tell whether such standard was consistent with the SSA regulations. (R. 24-25) Further, the ALJ observed that Garbutt did not offer any functional limitations or supporting analysis. (R. 25) Similarly, the ALJ found that Boettcher offered no description of functional limitations or supporting analysis. Further, the ALJ noted that Boettcher's conclusion that Mowbray is disabled is a legal conclusion not a medical conclusion. (R. 25) The ALJ found that both Garbutt's and Boettcher's conclusions were inconsistent with other medical records which document "normal mood and affect; cooperative behavior; good grooming; ability to relate; normal motor behavior; good eye contact; normal speech (fluent and clear, logical and organized); adequate comprehension and expressive languages; normal thought processes (clear and goal directed); normal thought content;

---

[4] In contrast, the ALJ gave "significant weight" to the opinion of the State Agency psychological consultant Michelle Santilli. (R. 24) Although Santilli found that Mowbray had moderate difficulties in the area of mental functioning, she concluded that he "could understand and remember simple, one and two-step instructions; carry out very short and simple instructions; maintain concentration and attention for extended periods of time; sustain a work routine without special supervision; ask simple questions and accept instruction; function in production-oriented jobs requiring little independent decisionmaking; and perform repetitive work activities without constant supervision." (R. 24) The ALJ found Santilli's conclusions to be consistent with and supported by the evidence. (R. 24) He also found her to be well qualified due to her training and experience and knowledgeable with respect to "our disability programs and their evidentiary requirements." (R. 24) The ALJ gave consultative psychological examiner Steven Pacella's opinion "some weight." (R. 24) The ALJ accepted Pacella's findings regarding Mowbray's ability to understand, remember, and carry out instructions; to make work-related decisions, and to interact appropriately with the public, supervisors, and coworkers. (R. 24) The ALJ explained that these findings were generally consistent with, and supported by, the record. (R. 24)

normal orientation; intact cognition; intact fund of knowledge; intact memory; and good insight and judgment." (R. 25, citing Exhibits 4F, 6F, 12F, 14F, and 15F). Consistency is a valid reason for crediting or discrediting evidence. *See*, 20 C.F.R. §§ 416.927, 404.1527 (evaluating opinion evidence).

The reasons behind the weight assigned to Drs. Garbutt's and Boettcher's opinions are acceptable reasons for discounting opinion evidence. See 20 C.F.R. §§ 416.927 and 404.1527. Based on the same, I am able to conduct a proper and meaningful review. I further find that the reasons the ALJ provided in weighing these opinions were explained sufficiently and well-supported by substantial evidence of record. It is well-established that the Court cannot reweigh the evidence. Because the ALJ has sufficiently explained his decision, the decision is in accordance with the law, and the decision is supported by substantial evidence of record, the ALJ did not err in this regard and remand is not warranted on this basis.

   *3. The Listings*

Mowbray also complains that the ALJ erred in finding that he did not meet or otherwise equal Listings 1.02, 12.04, 12.06, 12.08, 12.11, and 12.15. As the claimant, Mowbray bears the burden of proving that his severe impairment(s) meet or equal a listed impairment. *Bassknight v. Berryhill*, Civ. No. 16-1464, 2017 WL 4364254, at * 4 (M.D. Pa. Sept. 29, 2017), *citing, Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "To do this a claimant must show that all of the criteria for a listing are met." *Id.* Satisfying only some of the criteria is insufficient. *Id.* "The determination of whether a claimant meets or equals a listing is a medical one." *Naomi Rodriguez v. Berryhill*, Civ. No. 18-684, 2019 WL 2296582, at * 8 (M.D. Pa. May 30, 2019). "An administrative law judge is not

11

required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. *Id.* (citations omitted). After careful consideration, I find that substantial evidence supports the ALJ's conclusion that Mowbray's impairments do not meet or equal any of the Listings.

For instance, Mowbray cites to Listing 1.02,[5] which addresses major dysfunction of joints in connection with his knee impairment. He contends that the medical evidence contains an MRI "showing grade one chondrosis of the patellofemoral and medial components" as well as a "prior left knee MRI showing a partial thickness." *See* ECF Docket No. 16, p. 11. Mowbray insists that his records show he is in ongoing treatment for pain and instability and continues to take anti-inflammatory pain medications, receive knee injections, use assisted walking devices (a cane) and that he will need further treatment, both surgical and nonsurgical, despite a "good" prognosis. *Id.* The ALJ's conclusion to the contrary, however, is supported by substantial evidence of record. As the ALJ noted, right knee x-rays from January of 2016 indicate "'no significant change' other than what one would expect in someone the claimant's age." (R. 22) Additionally, "physical examinations further documented full range of motion; no tenderness or effusion; no ligamentous instability; normal strength in upper and lower extremities bilaterally; intact sensation; normal deep tendon reflexes; intact cranial nerves; and normal gait." (R. 22), citing Exhibits 9F, 11F, and 12F. The ALJ acknowledged that, while some medical records indicate that the claimant walked with a cane, "there is no

---

[5] Listing 1.02 addresses: "Major dysfunction of joint(s) (due to any cause): Characterized by gross anatomical deformity … and chronic joint pain and stiffness with sins of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively…; or B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively…." 20 C.F.R. Pt. 404, Supt. P, App. 1 (Listing 1.02).

indication in the record this was 'medically necessary.'" (R. 22) Consequently, I find no basis for remand regarding the ALJ's conclusion that Mowbray does not meet Listing 1.02.

The remaining Listings all deal with mental disorders. Listings 12.04, 12.06, 12.08, 12.11 and 12.15 each require that, in addition to other criteria, Mowbray establish that he has:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning…:
> 1. Understand, remember, or apply information….
> 2. Interact with others….
> 3. Concentrate, persist, or maintain pace….
> 4. Adapt or manage oneself….

See 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §§ 12.04B, 12.06B, 12.08B, 12.11B, and 12.15B. In the alternative, Listings 12.04, 12.06 and 12.15 provide that a claimant can forego satisfying the "B" criteria by demonstrating:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder…; and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life….

See 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §§ 12.04C, 12.06C, and 12.15C.

After careful consideration, I find that substantial record evidence supports the ALJ's conclusions that Mowbray's impairments do not meet or equal any of these Listings. As to the "B" criteria, the ALJ found that Mowbray had only "moderate" limitations in the areas of mental functioning. (R. 20-21) Substantial evidence supports

13

this conclusion. For instance, Mowbray is able to pay bills, count change, handle a savings account, and use a checkbook, and although he demonstrated some difficulties with learning and processing information, his performance "was intact on tasks of executive functioning." (R. 20) Consequently, there is substantial support for the ALJ's conclusion that Mowbray has only moderate limitations in understanding, remembering, or applying information.

Similarly, with respect to interacting with others, despite Mowbray's claims that he had significant difficulties in this area, the record indicates he is able to use public transportation, shop in stores, go out to bars, attend medical appointments, and cooperate, make good eye contact, and exhibit normal speech during mental status examinations. (R. 20) Further, although Mowbray claims he was terminated or suspended from work and volunteer duties because of difficulties dealing with others, the record indicates he was terminated because he lied about his high school diploma. (R. 20) Significantly, the ALJ limited Mowbray's interaction with others in the RFC by restricting him to no interaction with the public, to only occasional interaction and no collaboration with coworkers; and to only occasional collaboration with supervisors. (R. 20-25) As such, the record contains substantial support for the ALJ's conclusion that Mowbray has only moderate limitations in interacting with others.

With regard to concentrating, persisting, or maintaining pace, again, substantial evidence supports the ALJ's conclusion that Mowbray has only moderate limitations. He is able to use a computer and watch television. He "was found to have average performance with regard to digital span tasks" and was able to perform serial 3s and 7s during a consultative examination. (R. 20), citing, Exhibits 1E, 4F, and 6F. Again, the

14

ALJ accommodated Mowbray's limitations in this regard by limiting him to simple, routine, and repetitive work making only simple, work-related decisions. (R. 20-25)

Finally, with respect to adapting or managing oneself, the ALJ noted that Mowbray indicated, as documented in the medical records, that he is able to practice self-control. (R. 20) Further, he is able to live alone, maintain personal needs, can care for himself, prepare simple meals, and completes household chores such as cleaning, laundry and ironing. (R. 20) Additionally, Mowbray represented to treatment providers that he has no difficulty getting himself to places he needed to go. (R. 20) Consequently, I find, again, that substantial evidence supports the ALJ's conclusion that Mowbray only has a moderate limitation with respect to adapting or managing oneself.

Because Mowbray does not have an extreme limitation of one, or a marked limitation of two of the above-described areas of mental functioning, he does not satisfy the "B" elements of Listings 12.04, 12.06, 12.08, 12.11, or 12.15. As a result, regardless of whether he satisfied the "A" elements of those Listings, he would not be entitled to disability. As stated above, Listings 12.04, 12.06 and 12.15 do offer an alternative to the "B" criteria, however, I find that substantial evidence also supports the ALJ's conclusion that Mowbray did not satisfy the "C" criteria either. As the ALJ stated, "[t]he record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." (R. 21) Consequently, there is no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS CHARLES MOWBRAY )
    Plaintiff, )
)
-vs- ) Civil Action No. 18-1049
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 15th day of August, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket Nos. 15, 16) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED. It is further ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

                                      BY THE COURT:

                                      <u>/s/ Donetta W. Ambrose</u>
                                      Donetta W. Ambrose
                                      United States Senior District Judge